## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN ALLEN BRASHEAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-CV-473-GKF-PJC |
| | ) |
| TULSA COUNTY BOARD OF COUNTY COMMISSIONERS; SHERIFF STANLEY GLANZ, in his official capacity as Tulsa County Sheriff; WILLIAM PIERCE, individually and in his official capacity as Tulsa County Deputy; CHRISTOPHER YERTON, individually and in his official capacity as Tulsa County Deputy, | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the court is the Motion of defendant Board of County Commissioners of Tulsa County ("Board") to Dismiss Complaint and/or to Drop Party. [Dkt. #13, 14].

This case arises from a traffic stop that took place in Tulsa County, Oklahoma, on June 18, 2013, during which, according to the complaint, plaintiff John Allen Brashear was forcibly removed from his vehicle, tased, and arrested. In March 2015, Brashear brought this action against the two arresting officers, defendants William Pierce and Christopher Yerton, as well as their employer, defendant Stanley Glanz, and the Board. At the time, Glanz was the Sheriff of Tulsa County and Pierce and Yerton were two of his deputies. Brashear sued Sheriff Glanz in his official capacity and Deputies Pierce and Yerton in both their individual and official capacities. In his complaint, Brashear alleged the following claims against all defendants: (1) an unlawful arrest claim, under 42 U.S.C. § 1983, (2) an excessive force claim under § 1983 and

Article II, § 30 of the Oklahoma Constitution, (3) a state-law false arrest and imprisonment claim, and (4) a state-law assault and battery claim.

The Board moves for an order either dismissing it as a misjoined party or dismissing Brashear's claims against it for failure to state a claim. Further, assuming that one or more of Brashear's claims survive dismissal, the Board also requests an order dismissing his claim for punitive damages. The court addresses these issues in turn.

### A. *Misjoined Party*

The Board contends that Brashear's claims against it and Sheriff Glanz are both, in effect, suits against Tulsa County and that, as such, plaintiff is attempting to recover twice for the same loss. Consequently, the Board submits that its presence in the case is duplicative and unnecessary and that the sheriff (in his official capacity) is the more logical and transparent party to represent the County in this litigation.

The court starts with plaintiffs' state-law claims. In Oklahoma, all tort claims against the state or its political subdivisions must be brought pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA" or the "Act"). *See Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996) (describing the OGTCA as "the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort"). The Act imposes liability on the State and its political subdivisions for the torts of their employees acting within the scope of their employment and, in turn, immunizes such employees from liability. *See* 51 O.S. §§ 152.1(A), 153(A). In Oklahoma, a "[s]uit against a government officer in his or her official capacity is [considered] a suit against the entity that the officer represents" and "is improper under the [O]GTCA." *Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008); *accord Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla.2003). Rather, the Act requires that a suit brought pursuant to its provisions "name as

defendant the state or political subdivision against which liability is sought to be established" and specifically prohibits naming as a defendant an employee acting within the scope of his or her employment. 51 O.S. § 163(C). Under Oklahoma law, actions brought against a county must proceed by naming that county's board of county commissioners. 19 O.S. § 4.

Applying these principles here, the court cannot accept the Board's argument. Suing a county employee in his or her official capacity is improper under the OGTCA. To the extent that Brashear seeks to recover against Tulsa County for the tortious acts of its sheriff's deputies, Oklahoma law dictates that he must name the Board as defendant.

The court next turns to Brashear's § 1983 claims. As with Oklahoma law, official capacity suits under § 1983 are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). Although permissible, "[t]here is no longer a need to bring official-capacity actions against local government officials, [because] under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief." *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

Here, the Board and the sheriff in his official capacity are both proper defendants under *Monell*.[1] Although their joint presence in this case is unnecessary for purposes of plaintiff's

---

[1] Relying on the Tenth Circuit's decision in *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), the Board contends that it cannot be sued for the use of excessive force by a sheriff's deputy. In *Meade*, the court held that county commissioners cannot be held liable for a deputy's use of excessive force because, under Oklahoma law, county commissioners have "no statutory duty to hire, train, supervise or discipline … county sheriffs or their deputies." *Id.* at 1528.
   The Board's reliance on *Meade* is misplaced. Unlike the present case, the plaintiff in *Meade* did not name the board of county commissioners as defendant, but rather named three individual county commissioners, seeking to hold them and the sheriff liable in their individual capacities under a theory of supervisory liability. *See id.* at 1517, 1527-28. Nothing in *Meade* holds or suggests that it is somehow improper to sue a board of county commissioners as a way

§ 1983 claims, the court does not believe that dismissal of the Board is the appropriate, given that its presence is required for purposes of plaintiff's state-law claims.[2] Consequently, the Board's motion to be dropped as a misjoined party is denied.

### B. Failure to State a Claim

The Board next moves to dismiss Brashear's claims against it for failure to state a claim. Specifically, the Board contends that Brashear's complaint is deficient because it fails to articulate why he added the Board as a party and, with regard to his § 1983 claims, fails to plead a municipal policy, custom, or practice.

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When applying this standard, a court must accept as true all well-pleaded factual allegations and then ask whether those facts state a plausible claim for

---

of pursuing a *Monell* claim against that county based on the unlawful acts of its sheriff's deputies. *See duBois v. Bd. of Cnty. Comm'rs of Mayes Cnty.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332, at *7 (N.D. Okla. Sept. 29, 2014) ("While *Meade* would generally preclude a plaintiff from suing commissioners in their *individual* capacities for actions of sheriff's deputies, the court's holding in that case does not preclude a plaintiff from bringing a § 1983 *municipal liability* action against a *county*." (emphasis in original)); *see also Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (describing a *Monell* claim against a board of county commissioners as a suit against the county).

[2] The Board's contention that keeping it and Sheriff Glanz in the case will necessarily lead to a double recovery lacks merit. Such impermissible results can and are avoided by appropriate jury instructions. *See Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1306 (10th Cir. 2003). A properly constructed final judgment can also avoid such a result.

relief. *See id.* at 679. Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth." *Id.* at 678.

The court again starts with plaintiffs' state law claims. The Board does not contend that Brashear's complaint fails to allege sufficient facts to state plausible claims for excessive force, false arrest, and assault and battery. Rather, the Board submits that the complaint is "devoid of factual averments identifying the wrongdoing which *it*, specifically, is alleged to have committed" and that this deficiency is "fatal" to Brashear's claims. [Dkt. #13, p. 8 (emphasis added)].

This contention lacks merit. Under the OGTCA, a county—which under Oklahoma law must be sued by naming the board of county commissioners, *see* 19 O.S. § 4—is vicariously liable for the tortious conduct of its employees acting within the scope of their employment, *see* 51 O.S. § 153(A). Where a plaintiff has sufficiently alleged such tortious conduct, no further allegations are needed to impose liability on the county. Accordingly, because Brashear's state law claims do not require specific proof of wrongdoing on the Board's part, the court cannot dismiss his claims on this basis.

The court next considers plaintiff's § 1983 claims. Unlike liability under the OGTCA, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Rather, to prevail on a § 1983 municipal liability claim, a plaintiff must show (1) the existence of a municipal policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury alleged, and (3) "that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *See Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014). A municipal policy or custom may take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (alterations omitted) (internal quotation marks omitted).

Here, Brashear asserts two *Monell* claims against the Board, one for unlawful arrest and the other for excessive force. With regard to the policy-or-custom element, Brashear only supporting allegation is that the Board "and/or its authorized policy makers, authorized, approved, and/or knowingly acquiesced to the unconstitutional conduct of Defendants Pierce and Yerton," and that this policy or custom was the moving force behind the plaintiff's injuries. [Dkt. #2, pp. 8, 9]. The Board argues that this allegation merely recites the elements of a municipal liability action and thus is too conclusory to state a plausible claim for relief. In response, Brashear asserts that his complaint contains sufficient detail to give the County notice of its wrongdoing and thus to state a claim.

The court agrees with the Board. Plaintiff's conclusory allegations lack the factual detail necessary to state a plausible municipal liability claim. *See Patillo v. Larned State Hosp.*, 462 Fed. App'x 780, 783 (10th Cir. 2012) ("'[F]ormulaic recitation of the elements of a cause of action,' 'mere conclusory statements,' and 'naked assertions devoid of further factual enhancement' do not state a claim." (quoting *Iqbal,* 556 U.S. at 678)). As an initial matter, the court notes that plaintiff does not allege that his injuries resulted from "a formal regulation or policy statement," "a widespread practice" having the force of law, or "the failure to adequately train or supervise [county] employees." *Bryson*, 627 F.3d at 788. Rather, he alleges that the

Board or some other county policymaker authorized or approved the deputies' unlawful conduct. Plaintiff, however, does not offer any factual detail to support this allegation. He does not specify who authorized the deputies' conduct, nor does he indicate when or how such authorization took place. Merely alleging that some county policymaker approved the deputies' conduct in some way and at some time is too conclusory to state a plausible *Monell* claim. *See Dalcour v. City of Lakewood*, 492 Fed. App'x 924, 930 (10th Cir. 2012) ("To survive a motion to dismiss, [a municipal liability] claim must allege sufficient facts to show that a *specific* policy or custom was the moving force behind the alleged violation."(emphasis added)) *accord Granato v. City & Cnty. of Denver*, No. 11-CV-304-MSK-BNB, 2011 WL 3820730, at *8 (D. Colo. Aug. 30, 2011). Accordingly, the Board's motion to dismiss Brashear's § 1983 municipal liability claims is granted, without prejudice.

### C. Punitive Damages

Finally, the court considers the Board's motion to dismiss Brashear's claim for punitive damages. In the complaint, Brashear alleges that the defendants engaged in conduct evincing gross and reckless disregard for his rights and thus requests an award of punitive damages. Notably, his complaint does not identify the specific defendants against whom such damages are sought. The Board now moves to dismiss any request for punitive damages pending against it, noting that it cannot be held liable for such damages under either the OGTCA or § 1983. *See* 51 O.S. § 154(C) ("No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding "that a municipality is immune from punitive damages under 42 U.S.C. § 1983"). Brashear, in turn, does not object to this motion, asserting that his claim for punitive damages was never targeted at the Board. Because the Board cannot be held

- 8 -

liable for punitive damages based on the claims asserted, its motion to dismiss any request for such damages against it is granted.

WHEREFORE, the Board's Motion to Dismiss Party [Dkt. #14] is denied, and the Board's Motion to Dismiss Complaint [Dkt. #13] is granted in part and denied in part. The motion is granted as to plaintiff's § 1983 claims against the Board as well as his request for punitive damages against the Board, and denied as to all remaining claims. Plaintiff is granted leave to file an amended complaint, on or before December 21, 2015, addressing the deficiencies in his § 1983 claims against the Board.

ENTERED this 9th day of December, 2015.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT