IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN ALLEN BRASHEAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-473-GKF-PJC |
| ) | |
| TULSA COUNTY BOARD OF COUNTY ) | |
| COMMISSIONERS; SHERIFF STANLEY ) | |
| GLANZ, in his official capacity as Tulsa ) | |
| County Sheriff; WILLIAM PIERCE, ) | |
| individually and in his official capacity as ) | |
| Tulsa County Deputy; and CHRISTOPHER ) | |
| YERTON, individually and in his official ) | |
| capacity as Tulsa County Deputy, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the court is the Motion to Dismiss [Dkt. #21] of defendant Board of County Commissioners of Tulsa County (the "Board").

This case arises from a traffic stop that took place in Tulsa County, Oklahoma, on June 18, 2013, during which, according to the amended complaint, plaintiff John Allen Brashear was forcibly removed from his vehicle, tased, and arrested. In March 2015, Brashear brought this action against the two arresting officers, defendants William Pierce and Christopher Yerton, as well as their employer, defendant Stanley Glanz, and the Board. At the time, Glanz was the Sheriff of Tulsa County and Pierce and Yerton were two of his deputies. Brashear sued Sheriff Glanz in his official capacity and Deputies Pierce and Yerton in both their individual and official capacities. In his amended complaint, Brashear alleges the following claims against all defendants: (1) an unlawful arrest claim, under 42 U.S.C. § 1983, (2) an excessive force claim

under § 1983 and Article II, § 30 of the Oklahoma Constitution, (3) a state-law false arrest and imprisonment claim, and (4) a state-law assault and battery claim.

The Board now moves for an order (1) dismissing plaintiff's § 1983 claims against the Board as well as his state-law excessive force claims against all defendants for failure to state a claim, (2) dismissing plaintiff's official-capacity claims against Deputies Pierce and Yerton, (3) declaring that, as defendants, the Board and Sheriff Glanz are one and the same for the purposes of plaintiff's § 1983 claims, and (4) dismissing plaintiff's punitive damages claim. The court addresses these issues in turn.

### A. *Failure to State a Claim*

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When applying this standard, a court must accept as true all well-pleaded factual allegations and then ask whether those facts state a plausible claim for relief. *See id.* at 679. Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth." *Id.* at 678-79.

Here, the Board moves to dismiss Brashear's § 1983 claims against the Board as well as his state constitutional claim of excessive force against all defendants. As to the § 1983 claims, the Board submits that Brashear's allegations lack the factual detail necessary to state plausible claims of municipal liability. As for the state-law claim, the Board contends that relief under the Oklahoma Constitution is unavailable here because plaintiff has an adequate remedy under the

Oklahoma Governmental Tort Claims Act ("OGTCA" or the "Act"). The court considers these issues in turn.

### 1. Municipal Liability Claims

"A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Rather, to prevail on a § 1983 municipal liability claim, a plaintiff must show (1) the existence of a municipal policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury alleged, and (3) "that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014). A municipal policy or custom may take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (alterations omitted) (internal quotation marks omitted). To establish deliberate indifference, a plaintiff must show that "the municipality ha[d] actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation, and [that] it consciously or deliberately cho[se] to disregard the risk of harm." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 771 (10th Cir. 2013).

Here, Brashear asserts *Monell* claims against the Board for unlawful arrest and excessive force. His allegations relevant to those claims consist of the following:

> Defendants, Glanz and [the Board] and/or their authorized policymakers, authorized, approved, and/or knowingly acquiesced in the unconstitutional conduct of Defendants Pierce and Yerton.
>
> Based on information and belief, the [Board] and Sheriff's Office had policies and procedures in place to govern their county employees in the proper way and manner to detain and effectuate arrests. Based on information and belief, the [Board] and the Sheriff's Office failed to adequately train and/or supervise its county officers on these policies—that govern the proper way and manner to detain and effectuate an arrest.
>
> Again, based on information and belief, the [Board] and the Sheriff's Office have a widespread cavalier practice of enforcing and holding accountable their officers on the policies that govern the proper ways and manner of detaining and effectuating arrests.
>
> Consequently, Defendants, [the Board] and the Sheriff's Office' [sic] policies, customs and/or practices were the "moving force" behind Plaintiff's constitutional injuries.

[Dkt. #20, p. 7-8; *see also id.* at 6]. The Board contends that these allegations merely recite the elements of a municipal liability action and thus are too conclusory to state a plausible claim for relief. In response, Brashear submits that these allegations contain sufficient factual detail to give the Board notice of its wrongdoing and thus to state a claim. In doing so, he asserts that his use of allegations "based on information and belief" is proper here because the facts alleged "are peculiarly within the possession and control of the defendant." [Dkt. #25, p. 9 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010))].

In assessing these positions, the court notes that Brashear alleges the existence of a municipal policy or custom based on ratification and failure-to-train theories. As to his ratification theory, Brashear asserts the same conclusory allegation that the court dismissed as part of his original complaint, namely, that "[d]efendants, Glanz and [the Board] and/or their authorized policymakers, authorized, approved, and/or knowingly acquiesced in the unconstitutional conduct of Defendants Pierce and Yerton." Once again, Brashear does not

- 4 -

specify who authorized the deputies' conduct, nor does he indicate when or how such authorization took place. As the court has previously held, "[m]erely alleging that some county policymaker approved the deputies' conduct in some way and at some time is too conclusory to state a plausible *Monell* claim." *Brashear v. Tulsa Cty. Bd. of Cty. Commissioners*, No. 15-CV-473-GKF-PJC, 2015 WL 8485250, at *4 (N.D. Okla. Dec. 9, 2015).

As for plaintiff's failure-to-train allegations, the result is the same. A closer examination of the law relevant to this theory of municipal liability illustrates the deficiencies in Brashear's amended complaint. As the Supreme Court has recognized, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). To prevail on this theory, a plaintiff "must identify a *specific* deficiency in the county's training program closely related to his [or her] ultimate injury," *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (emphasis added), and show that the "need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need," *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (internal quotation marks omitted). "In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction . . . ." *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir.1998)).

Here, Brashear does not identify *specific* deficiencies in the county's training program, nor does he allege any *facts* with regard to causation or deliberate indifference. Rather, he merely alleges that the county "failed to adequately train and/or supervise its county officers on . . . the proper way and manner to detain and effectuate an arrest." [Dkt. #20, p. 8]. This alleged deficiency is far too general, *see Lopez,* 172 F.3d at 760 (noting that allegations of "general deficiencies in the county's training program" are "not enough" to state a claim), and the facts offered in support of it far too conclusory to state a plausible claim for relief, *see Mocek v. City of Albuquerque*, No. 14-2063, 2015 WL 9298662, at *14 (10th Cir. Dec. 22, 2015) (dismissing a municipal liability action for failure to state a claim where the plaintiff failed to allege any facts with regard to causation or deliberate indifference); *see also Patillo v. Larned State Hosp*., 462 Fed. App'x 780, 783 (10th Cir. 2012) ("'[F]ormulaic recitation of the elements of a cause of action,' 'mere conclusory statements,' and 'naked assertions devoid of further factual enhancement' do not state a claim." (quoting *Iqbal,* 556 U.S. at 678)). The court, therefore, grants the Board's motion to dismiss Brashear's § 1983 municipal liability claims, without prejudice.

2. State Constitutional Excessive Force Claim

In *Bosh v. Cherokee County Government Building Authority*, 305 P.3d 994, 1001 (Okla. 2013), the Oklahoma Supreme Court recognized a private cause of action for excessive force under Article II, § 30 of the Oklahoma Constitution, notwithstanding provisions of the OGTCA barring such claims. Shortly thereafter, in *Perry v. City of Norman*, 341 P.3d 689 (Okla. 2014), the state high court limited *Bosh* to its specific circumstances, holding that a *Bosh* claim "for excessive force against a municipality may not be brought against a governmental entity when a

cause of action under the OGTCA is available." *Id.* at 693.  In that situation, the court explained, "the plaintiff's remedy belongs exclusively within the confines of the OGTCA." *Id.*

Here, Brashear asserts an excessive force claim under Article II, § 30 of the Oklahoma Constitution against all defendants.  The Board moves to dismiss that claim, submitting that it may only be brought under the OGTCA.  In response, Brashear does not dispute *Perry*'s holding, but rather contends that his state-law excessive force claim was "included with his 42 U.S.C. § 1983 claims."  [Dkt. #25, p. 12-13].

The court agrees with the Board.  The OGTCA provides a cause of action for Brashear's excessive force claim.  *See Perry*, 341 P.3d at 690-92.  He thus cannot bring that action under the Oklahoma Constitution.  It not entirely clear what plaintiff means by saying that his state-law claim was "included" with his § 1983 claims.  The court, however, need not resolve that ambiguity here.  Brashear's "remedy belongs exclusively within the confines of the OGTCA." *Perry*, 341 P.3d at 693.  Accordingly, the Board's motion to dismiss Brashear's state-law excessive force claim is granted.

### B.  *Official-Capacity Claims Against Deputies Pierce and Yerton*

Brashear's amended complaint names Deputies Pierce and Yerton in their individual and official capacities.  The Board contends that plaintiff's official-capacity claims against the deputies are improper and must be dismissed.  In response, Brashear submits that such claims are merely another way of pleading a *Monell* action against the county and thus are permissible.

Whether an official-capacity suit is permissible in this context differs with regard to Brashear's federal and state claims.  Under both federal and state law, an official-capacity suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978); *accord*

*Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008).  Federal law, however, allows such actions whereas Oklahoma law does not.  *See Brashear*, 2015 WL 8485250, at *1-2.  In Oklahoma, any tort action against the state or its political subdivisions must name that entity as defendant and *cannot* proceed as an official-capacity suit.  *See* 51 O.S. § 163(C); *see also Speight*, 203 P.3d at 179 (noting that official-capacity suits against governmental employees are "improper under the [O]GTCA").  In contrast, under § 1983, official-capacity suits are permissible but considered unnecessary given that "under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief."  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

  Here, Brashear has sued Deputies Pierce and Yerton in their official capacities, Sheriff Glanz in his official capacity, and the Board.  These suits all equate to actions against Tulsa County and are all permissible methods of pleading a *Monell* claim.  Nevertheless, although permissible under § 1983, such suits are duplicative and unnecessary in this case given that Brashear has named the Board as a defendant.  *See* 19 O.S. § 4 (stating that actions brought against a county must proceed by naming that county's board of county commissioners); *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (describing a *Monell* claim against a board of county commissioners as a suit against the county).  The court, therefore, grants the Board's motion to dismiss Brashear's official capacity suits against Deputies Pierce and Yerton.  *See Williams v. City of Tulsa*, No. 11-CV-469-TCK-FHM, 2013 WL 244049, at *11 (N.D. Okla. Jan. 22, 2013) ("In cases where both the governmental entity and official are sued, any official capacity claims are redundant with those against the entity and therefore subject to dismissal."); Martin A. Schwartz, *Section 1983 Litigation* 89 (3d ed. 2014) ("[W]hen claims are asserted against both the municipal entity and a municipal official in her

official capacity, federal courts typically dismiss the official capacity claim as "redundant" to the municipal-entity claim.").

### C. *Whether, as Defendants, the Board and Sheriff Glanz are One and the Same*

As just mentioned, Brashear has named both the Board and Sheriff Glanz, in his official capacity, as defendants. The Board now moves for an order declaring that, for the purposes of plaintiff's § 1983 claims, it and Sheriff Glanz are one and the same defendant. In response, Brashear contends that the Board and the sheriff in his official capacity are both proper defendants under *Monell* and, thus, that the Board's request should be denied.

The law on this issue is clear. Plaintiff's claims against the Board and the sheriff in his official capacity both equate to actions against Tulsa County. *See Brashear*, 2015 WL 8485250, at *2 (noting that the Board and the sheriff's "joint presence in this case is unnecessary" given that both represent the county); *see also* 19 O.S. § 4; *Monell*, 436 U.S. at 690 n.55; *Myers*, 151 F.3d at 1316, n.2. In short, they are two ways of pleading the same claim. The court, therefore, holds that the Board and Sheriff Glanz are one and the same defendant for the purposes of plaintiff's § 1983 claims.

### D. *Punitive Damages*

Finally, the court considers the Board's motion to dismiss Brashear's claim for punitive damages. In his amended complaint, Brashear alleges that the defendants engaged in conduct evincing gross and reckless disregard for his rights and thus requests an award of punitive damages. The Board now moves to dismiss any request for punitive damages pending against it, noting that it cannot be held liable for such damages under either the OGTCA or § 1983. *See* 51 O.S. § 154(C) ("No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages."); *City of Newport v. Fact Concerts,*

*Inc.*, 453 U.S. 247, 271 (1981) (holding "that a municipality is immune from punitive damages under 42 U.S.C. § 1983"). In response, Brashear submits that his request for punitive damages is limited to the individual officers in their private capacities and thus that dismissal is unwarranted.

The court agrees with Brashear. Although the Board cannot be held liable for punitive damages based on the claims asserted, Brashear's amended complaint clearly states that his claim for punitive damages is "Against the Individual Defendants in Their Private Capacities," that is, against Deputies Pierce and Yerton. [Dkt. #20, p. 11]. The court, therefore, denies the Board's motion to dismiss on this issue.

WHEREFORE, the Board's Motion to Dismiss [Dkt. #21] is granted in part and denied in part. The motion is denied as to the issue of punitive damages and granted as to all remaining issues. Brashear is granted leave to file a second amended complaint, on or before February 29, 2016. The amendments, if any, shall be limited to the deficiencies in plaintiff's § 1983 claims against the Board.

IT IS SO ORDERED this 17th day of February, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT